UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

JEAN C. RIVERA-MERCADO [27],

    Defendants.

Civil No. 08-204 (DRD)

**ORDER**

Pending before the Court is defendant Jean C. Rivera-Mercado ("Rivera-Mercado") *Motion To Dismiss* (Docket No. 1688); the Government's opposition (Docket No. 1799); the Magistrate Judge's *Report And Recommendation* (Docket No. 1815); and, Rivera-Mercado's *Objections To Report And Recommendation* (Docket No. 1837). For the reasons set forth below, the Court adopts *in toto* the *Report and Recommendation* (Docket No. 1815) entered by the Chief, Magistrate Judge Justo Arenas ("Magistrate Judge"), as supplemented herein.

Defendant Rivera-Mercado's motion to dismiss (Docket No. 1688) was referred to Magistrate Judge Arenas (Docket No. 1790) for report and recommendation. On June 12, 2009, a *Report and Recommendation* was entered by Magistrate Judge Arenas wherein he recommended that Rivera-Mercado's dismissal request of all charges be denied. *See Report and Recommendation* of June 12, 2009, Docket No. 1815 ("*Report and Recommendation*"). The Court granted Rivera-Mercado ten (10) days, that is, until June 26, 2009, to object to the *Report and Recommendation*. See *Report and Recommendation* (Docket No. 1815, page 7). The record shows that, Rivera-Mercado filed a timely objection to the *Report and Recommendation* (Docket No. 1837).

The Court finds that the Magistrate Judge appropriately forewarned the defendant of the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Federal Rule of Civil Procedure ("Fed.R.Civ.P."), that any written objections to the *Report and Recommendation* must be filed with the Clerk of Court within the next

ten (10) days upon receipt of the *Report and Recommendation*. Furthermore, the defendant was duly advised that failure to comply with the provisions of Rule 72(d) of the Fed.R.Civ.P. is a "waiver of the right to review by the district court. *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986)." *See* Docket No. 1815. Furthermore, it is settled that defendant's failure to timely object to the report and recommendation precluded any further appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985). *See also* Rule 72(d) of the Local Civil Rules of the United States District Court for the District of Puerto Rico. Hence, according to the *Report and Recommendation* (Docket No. 1815), the parties had ten (10) days to file the objections to the report.

In the instant case, the objections to the *Report and Recommendation* were due on **June 26, 2009.** The record shows that the defendant opposed the *Report and Recommendation* on **June 18, 2009** (Docket No. 1837), that is, within the ten (10) day period.

**Standard of Review for a Report and Recommendation**

A District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); Rule 72 of the Local Rules for the District of Puerto Rico ("Local Rules"). *See Mathews v. Weber*, 423 U.S. 261 (1976). As a general rule, an adversely affected party may contest the Magistrate Judge's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72; Fed.R.Civ.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in its pertinent part, provides that:

> Within ten days[1] of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings

---

[1] The Court is mindful that effective December 1, 2009, the ten day period to object to a report and recommendation has been amended to fourteen days. The new amendment, however, is not applicable to the instant case, as the *Report and Recommendation* was issued on June 12, 2009.

2

> or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

However, "[a]bsent objection by the plaintiffs, [a] district court ha[s] a right to assume that [a party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that specific objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir. 1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See generally United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980). Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected. *See Borden v. Secretary of H.H.S.*, 836 F.2d at 6.

In the instant case, defendant Rivera-Mercado timely objected to the findings and recommendations made by the Magistrate Judge, hence, the Court must review *de novo* the findings related to the specific objections. Hence, the Court must review *de novo* the *Report and Recommendation* as to those specific portions objected to. *See Douglass v United Servs. Auto, Ass'n*, 79 F.3d 1415 (5th Cir. 1996); *Nogueras-Cartagena v. United States*, 172 F. Supp. 2d 296, 305 (D.P.R. 2001); *Garcia v. I.N.S.*, 733 F. Supp. 1554 (M.D.Pa. 1990).

**Analysis**

Defendant Rivera-Mercado was indicted on May 27, 2008 on six counts, involving violations that allegedly began in or about the year 2003, in the Municipalities of Ponce and/or Juana Díaz, until the return of the instant indictment, to wit:

(a) Count One charged Rivera-Mercado with the defendants herein of "knowingly and intentionally, combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and intentionally possess with intent to distribute and/or to distribute controlled substances and/or in excess of fifty (50) grams of cocaine base, a Schedule II Narcotic Drug Controlled Substance; and/or in excess of one (1) kilogram of heroin, a Schedule I, Narcotic Drug Controlled Substance; and/or in excess of five (5) kilograms of cocaine, a Schedule II, Narcotic Drug Controlled Substance; and/or in excess of one hundred (100) kilograms of marijuana, a Schedule I, Controlled Substance; within one thousand (1,000) feet of the real property comprising a public or private school or housing facility owned by a public housing authority and/or a playground, as prohibited by Title 21, United States Code, Sections 841(a)(1) and 860. All in violation of Title 21, United States Code, Section 846." (Docket No. 3, p. 11).

(b) Count Two charged Rivera-Mercado with the defendants herein of "aiding and abetting each other, did knowingly and intentionally possess with intent to distribute one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, within one thousand (1,000) feet of the real property comprising a public or private school and/or housing facility owned by a public housing authority and/or a playground. All in violation of Title21, United States Code, §§ 841(a)(1), 860; and Title 18, United States Code, § 2." (Docket No. 3, p. 25).

(c) Count Three charged Rivera-Mercado with the defendants herein of "aiding and abetting each other, did knowingly and intentionally possess with intent to distribute fifty (50) grams or more of a mixture

or substance containing a detectable amount of cocaine base, a Schedule II Narcotic Drug Controlled Substance, within one thousand (1,000) feet of the real property comprising a public or private school and/or housing facility owned by a public housing authority and/or a playground. All in violation of Title 21, United States Code, §§ 841(a)(1), 860; and Title 18, United States Code, § 2." (Docket No. 3, p. 28).

(d) Count Four charged Rivera-Mercado with the defendants herein of "aiding and abetting each other, did knowingly and intentionally possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, within one thousand (1,000) feet of the real property comprising a public or private school and/or housing facility owned by a public housing authority and/or a playground. All in violation of Title 21, United States Code, §§ 841(a)(1), 860; and Title 18, United States Code, § 2." (Docket No. 3, p. 32).

(e) Count Five charged Rivera-Mercado with the defendants herein of "aiding and abetting each other, did knowingly and intentionally possess with intent to distribute one hundred (100) kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Narcotic Drug Controlled Substance, within one thousand (1,000) feet of the real property comprising a public or private school and/or housing facility owned by a public housing authority and/or a playground. All in violation of Title 21, United States Code, §§ 841(a)(1), 860; and Title 18, United States Code, § 2." (Docket No. 3, p. 35).

(f) Count Six charged Rivera-Mercado with the defendants herein of "knowingly and intentionally, combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit and offense against the United States, that is, to knowingly and intentionally possess firearms and in relation to a drug trafficking crime as charged in Counts One, Two, Three, Four and Five of the instant Indictment, as prohibited by Title 18, United States Code, § 924(c)(1)(A). All in violations of Title 18, United States Code, Section 924(o)." (Docket No. 3, p. 36-37).

The Magistrate Judge also made the following findings:

(a) On May 11, 2009, defendant Rivera-Mercado moved to dismiss Counts Six of the Indictment

(Docket No. 1688), under Rule 12(b)(2) of the Federal Rules of Criminal Procedure ("Fed.R.Crim.P."), and invoking the Fifth Amendment of the United States Constitution. Defendant also moved for all the remaining counts, as well. *See Report and Recommendation* (Docket No. 1815, p. 2). Rivera-Mercado alleges that he was designated as one of the "enforcers"[2] for the drug trafficking organization in the Indictment.

As to defendant's allegations, the Magistrate Judge made the following findings:

"The defendant lists the Jencks discovery he has received from the United States, particularly the grand jury statements of Ernest D. Vidro and Ramón González and notes that in neither of the grand jury statements is there evidence to support a finding of probable cause to believe that he was a member of the conspiracy." (Docket No. 1815, p. 2). "He also attacks the lack of foundation of probable cause for any of the other counts, making reference to a possibly confusing state of Ernesto Vidro's grand jury testimony as it relates to one of two people listed in the indictment, himself and co-defendant Carlos Alindato-Pérez." *Id.* "He notes also that no firearms are mentioned by Ernesto Vidro. Finally he complains of some documents, relating to a police report of September 30, 2006, which are in the Spanish language and which should be translated for the benefit of the court. He complains that it has not been established that these documents were presented to the grand jury." *Id.*

(b) The United States filed an opposition (Docket No. 1799), stating that the all the Jencks' material was provided to Rivers-Mercado "since the date of the date of his arraignment." (Docket No. 1799, p. 2). Rivera-Mercado's dismissal request is based on the discovery materials provided by the Government, particularly as to what witnesses, Ernest D. Vidro and Ramón González would have testified, in the event trial would had commenced on May 11, 2009, as previously scheduled. "The United States takes issue with

---

[2] "Enforcers did possess, carry, brandish, use and discharge firearms to protect the leaders and members of the drug trafficking organization, the narcotics, the proceeds derived from their sales, and to further accomplish the goals of the conspiracy. Enforcers acted only upon instructions given by the leaders of this organization. At various times, some enforcers were assigned to provide protection to the drug trafficking organization's various drug distributions points." (Docket No. 3, p. 17).

the allegation that there is no evidence against this defendant [Rivera-Mercado]." *See Report and Recommendation*, Docket No. 1815, p. 3. "The United States reminds the defense that in the discovery package there are contained specific documents, most of which will not be introduced at trial, which refer to events or overt acts in furtherance of the conspiracy that specifically concern this defendant's participation. That evidence will obviously be presented at trial through witness testimony and physical evidence." *Id.*

Rivera-Mercado invoked the court's supervisory powers in his dismissal request, specifically on the "manner in which the United States has or has not presented evidence to the grand jury." *See Report and Recommendation*, Docket No. 1815, p. 3. Hence, the core of this matter is "whether a district court may invoke its supervisory power to dismiss an indictment for prosecutorial misconduct in a grand jury investigation, where the misconduct does not prejudice the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 252 (1988). The Magistrate Judge recommended that defendant's motion to dismiss (Docket No. 1688), be denied, as Rivera-Mercado failed to show that the prosecutorial misconduct is prejudicial to him. *See Report and Recommendation*, Docket No. 1815, pp. 3-6.

Defendant Rivera-Mercado timely objected to the findings and recommendations made by the Magistrate Judge (Docket No. 1837): (a) defendant challenges Count Six of the Indictment "for failing to ensure that he's being prosecuted on basis of the facts presented to the Grand Jury and because the crime does not charge a crime;" and (b) defendant also challenges Counts One through Five "because these counts were not based on facts presented to the grand jury." (Docket No. 1837, p. 2).

Defendant argues, as follows: "In sum, not only has the government produced no evidence for the jury to find probable cause against defendant on Count Six for conspiring to possess a firearm in furtherance of a drug trafficking crime, but the testimony of cooperating witness Vidro-Díaz would not allow the Grand Jury to determine probable cause in Counts One thru Five, against defendant [27] Jean Carlos Rivera-Mercado because, there being two defendant's referred by the government as a.k.a. "Carlitos" (co-defendant

# 50, Carlos Alindato Pérez also), the identification of defendant has not been considered or found by the Grand Jury." (Docket No. 1837, p. 7). "Because Count Six does not properly allege a crime against the United States, and because the Grand Jury did not consider and that [sic] the defendant [27] Jean C. Rivera Mercado was a participant in either the conspiracy alleged in Count One, nor aiding and abetting the possession with intent to distribute the concerned drugs in Counts Two thru Five, nor engages in the conspiracy charged in Count Six, the Indictment is fatally flawed and must be dismissed." (Docket No. 1837, p. 8). The Court disagrees, and briefly explains.

For the reasons set forth below, the Court agrees and adopts *in toto* the findings and recommendations of the Magistrate Judge, as supplemented herein. *See Report and Recommendation*, Docket No. 1815, pp. 3-6.

In *Bank of Nova Scotia*, 487 U.S. at 254-255, the Court held:

> In the exercise of its supervisory authority, a federal court "may, within limits, formulated procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505 (1983). Nevertheless, it is well established that "[e]ven a sensible and efficient use if the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions." *Thomas v. Arn*, 474 U.S. 140, 148 (1985). To allow otherwise "would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *United States v. Payner*, 447 U.S. 727, 737 (1980). Our previous cases have not addressed explicitly whether this rationale bars exercise of a supervisory authority where, as here, dismissal of the indictment would conflict with the harmless-error inquiry mandated by the Federal Rules of Criminal Procedure.
>
> **We now hold that a federal court may not invoke supervisory power to circumvent the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded**."
>
> . . .
>
> Our conclusion that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant is supported by other decisions of this Court. In *United States v. Mechanik*,

>475 U.S. 66 (1986), we held that there is "**no reason not to apply [Rule 52(a)] to 'errors, defects, irregularities, or variances' occurring before a grand jury just as we have applied it to such error occurring in the criminal trial itself.**" *Id.*, at 71-72. In *United States v. Hasting*, **461 U.S. at 506 (1983), we held that "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error**."
>
>. . .
>
>Having concluded that our customary harmless-error inquiry is applicable where, as in the cases before us, a court is asked to dismiss an indictment prior to the conclusion of the trial, we turn to the standard of prejudice what courts should apply in assessing such claims. We adopt for this purpose, at least where dismissal is sought for nonconstitutional error, the standard articulated by Justice O'Connor in her concurring opinion in *United States v. Mechanik*, *supra*. Under this standard, dismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *United States v. Mechanik*, *supra*, at 78. (Emphasis ours).

In *United States v. Williams*, 504 U.S. 36, 48, 51-53 (1992), the Supreme Court held that the district court may not dismiss a valid indictment merely because the government failed to disclose to the grand jury exculpatory evidence that it has in its possession. The Court held:

>The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised. "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury 'can investigate merely a suspicion that the law is being violated, or even because it wants assurance that it is not.'" *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). It need not identify the offender it suspects, or even "the precise nature of the offense" it is investigating. *Blair v. United States*, 250 U.S. 273, 282 (1919). The grand jury requires no authorization from its constituting court to initiate an investigation, see *Hale v. Henkel*, 201 U.S. 43, 59-60 (1906), nor does the prosecutor require leave of court to seek a grand jury indictment. And in its day-to-day functioning, the grand jury generally operates without the interference of a presiding judge. See *United States v. Calandra*, 414 U.S. 338, 343 (1974).
>
>. . .

> According to the description of an early American court, three years before the Fifth Amendment was ratified, it is the grand jury's function not "to enquire ... upon what foundation [the charge may be] denied," or otherwise to try the suspect's defenses, but only to examine "upon what foundation [the charge] is made" by the prosecutor. *Respublica v. Shaffer*, 1 U.S. (1 Dall.) 236 (O.T.Phila. 1788); see also F. Wharton, Criminal Pleadings and Practice § 360, pp. 248-249 (8th ed. 1880). As a consequence, neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented. See 2 M. Hale, Pleas of the Crown 157 (1st Am. ed. 1847); *United States ex rel. McCann v. Thompson*, 144 F.2d 604, 605-606 (CA2), cert. denied, 323 U.S. 790 (1944).
>
> Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system. . . . .
>
> If the grand jury has no obligation to consider all "substantial exculpatory" evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.

*See also United States v. Morrison*, 449 U.S. 361, 365 (1981), standing for the proposition that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate."

After having reviewed the objections filed by defendant Rivera-Mercado, which the Court notes are a rehash of the same arguments raised in the dismissal request, the Court agrees with the Magistrate Judge's findings that this case "does not present some overpowering reason to consider the pretrial dismissal of the charges, unless the court attributes some portent to the evanescent argument of the defense." *See Report and Recommendation*, Docket No. 1815, p.5. "Since this court's supervisory powers over the administration of grand juries is aimed at preventing abuses of the grand jury's power, and the prosecution conduct yet cannot be characterized as the type of misconduct required to dismiss a valid indictment, even after reading the cases cited by the defendant, the present case does not warrant invoking this court's supervisory powers." Id.

Defendant Rivera-Mercado basically alleges that the *Jencks* material provided and other evidence submitted under Fed.R.Cr.P. 16, constitutes all the evidence against Rivera-Mercado. However, there are cooperators and other evidence in the 302's, as well as other documents provided, which are not *per se*

10

admissible, but testimony may be provided to validate the evidence underlying the documents, which may potentially prove other overacts that may or may not involve co-defendant Rivera-Mercado, all of which is not required to be divulged under Fed.R.Cr.P. 16.

Although the Court considers that the error is harmless, as this Court may still cure the error by granting dismissal of the Indictment at Rule 29 stage of the proceedings, provided that there is no proof connecting "Carlitos" when referring to co-defendant Jean C. Rivera-Mercado.  The Court is cognizant that it may exercise such dismissal powers, at this stage of the proceedings, in exceptional circumstances only. However, "such [dismissal] powers must be used sparingly." *United States v. Osorio*, 929 F.2d 753, 763 (1st Cir. 1991) (citing *United States v. Babb*, 807 F.2d 272, 279 (1st Cir. 1986); *United States v. Lieberman*, 608 F.2d 889, 899 (1st Cir. 1979), *cert. denied* 444 U.S. 1019 (1980).  Further, such "[p]otent elixirs should not be casually dispensed." *Id*.

In view of the foregoing, the Court will respect the grand jury's duty to investigate, and its independence to do so. "If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." *Williams*, *supra* at page 53.

**Conclusion**

For the reasons set forth herein, the *Report and Recommendation* (Docket No. 1815) is adopted *in toto*, as supplemented herein.  After having reviewed *de novo* the objections filed by defendant Rivera-Mercado (Docket No.  1837), the objections are denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of December, 2009.

                 s/Daniel R. Domínguez
                 DANIEL R. DOMINGUEZ
                 U.S. District Judge